

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

ANDREW RAYMOND MURPHY,

    Petitioner,
v.                                                  Civil Action No. 2:22-cv-110

D. LEU, Warden
FCI Petersburg-Low,

    Respondent.

## REPORT AND RECOMMENDATION

Pro se Petitioner Andrew Raymond Murphy ("Murphy" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2241 alleging error in the calculation of his federal sentence. Specifically, Murphy seeks restoration of good time credits ("GTC") that he lost by possessing a non-hazardous tool in violation of prison policy. Respondent Warden D. Leu, Warden of Federal Correctional Complex Petersburg ("Respondent"), moved for summary judgment, and the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Because Petitioner's due process rights were observed during the Bureau of Prisons's ("BOP") disciplinary proceedings, the undersigned recommends that Respondent's Motion for Summary Judgment be granted, and the petition be dismissed.

                            I.      **STATEMENT OF THE CASE**

A.    **Overview of the BOP Inmate Disciplinary Process.**

The BOP has administrative and rulemaking authority over federal prisons pursuant to Congressional delegation. See 18 U.S.C. § 4001 et. seq. Among the BOP's statutory duties is to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . . ." 18 U.S.C. § 4042(a)(3). The BOP's Inmate Discipline

Program and its associated administrative appeal process are set out in the Code of Federal Regulations. See 28 C.F.R. §§ 541.1 et. seq., 542.10 et. seq.

When BOP staff have a reasonable belief that an inmate has violated the BOP disciplinary code, they prepare an incident report containing a written description of the charges and provide a copy to the inmate. 28 C.F.R. § 541.5(a). A staff member then investigates, forwarding all relevant information to the Unit Disciplinary Committee ("UDC") for an initial hearing. 28 C.F.R. §§ 541.5(b), 541.7. The UDC reviews any evidence prison staff or the inmate presents at the hearing. The UDC can (1) find that the inmate committed the prohibited act; (2) find that the inmate did not commit the prohibited act; or (3) refer the incident report to the Discipline Hearing Officer ("DHO") based on the severity of the act. 28 C.F.R. § 541.7(a).

If the UDC refers the incident report to the DHO, the inmate is advised of his or her rights and allowed to designate a staff representative to assist at the hearing. 28 C.F.R. § 541.8. Inmates may also name witnesses and describe those witnesses' expected testimony. Id. At the hearing, inmates may make statements and present evidence. Id. The DHO considers all the evidence and determines whether the inmate committed the charged prohibited act. Id. The DHO then prepares a report of the proceedings. 28 C.F.R. § 541.8(h).

Administrative appeals from DHO decisions are submitted to the Regional Director. 28 C.F.R. § 542.14(d)(2). A petitioner has 20 days following receipt of the DHO report to submit a regional appeal. 28 C.F.R. § 542.15(a). An inmate may then appeal to the General Counsel (Central Office) within "30 calendar days of the date the Regional Director signed the response." Id. The General Counsel is the highest level of administrative appeal. Id.

B.   **Factual and Procedural Background.**

Murphy is serving a 132-month sentence for drug-related convictions.[1] Forbes Decl. ¶ 4 (ECF No. 11-1, at 2). With GTC, he may be eligible for release in September 2027. Id.

1.   **The April 2021 Incident and BOP Proceedings.**

Murphy has been housed in cell 517 at Federal Correctional Institution—Petersburg ("FCI Petersburg")[2] since December 2020. Forbes Decl., Attach. A § 11 ("Incident Rpt.") (ECF No. 11-1, at 5). He is the only inmate housed in cell 517. Id. On April 6, 2021, BOP officer Aaron Holderfield searched the cell, removing the ceiling light above the bunkbeds. Id. From the ceiling area, he removed five socks, which contained 25 packs of Newport cigarettes and two pairs of hair clippers. Id. The socks "were clean and free of dust," which Holderfield surmised "indicat[ed] they had not been in the ceiling long." Id. Cigarettes and hair clippers are unauthorized items.

On April 7, 2021, the BOP issued an Incident Report charging Murphy with violating BOP Disciplinary Code 331—possession of a non-hazardous tool. Id. §§ 9, 12–13. Petitioner received a copy of the Incident Report that same day. Id. §§ 14–16. Plaintiff was advised of his rights, and he stated that "[t]he items found were in a common area. I don't understand why I'm being held responsible for what other people put in the ceiling. I was at work at Unicor all day long." Id. § 24 (ECF No. 11-1, at 7).

The UDC held a hearing on April 9, 2021. Id. § 21 (ECF No. 11-1, at 6). Murphy

---

[1] Conspiracy to distribute and possession with intent to distribute 5-fluro-ADB in violation of 21 U.S.C. § 846. Forbes Decl. ¶ 4 (ECF No. 11-1, at 2).

[2] Plaintiff claims that the incident took place at Petersburg SCP–camp, not FCI Petersburg–low. Pl.'s Reply (ECF No. 13, at 2). Records show that the incident took place at FCI Petersburg–low. Forbes Decl. ¶ 4 (ECF No. 11-1, at 2). But see Incident Rpt. § 11 (ECF No. 11-1, at 5) (referring to "a targeted search of various areas of the Camp 5th floor"). However, any dispute over the precise location is not material.

testified that when he "got off from work, [he] watched them performing a search of [his] room. They said to each other this is a common room." Id. § 17. The UDC recommended loss of GTC, among other sanctions, and referred the case to the DHO. Id. § 20. Petitioner received a written notice of his rights at the upcoming hearing. Forbes Decl. Attach. B ("Inmate Rights") (ECF No. 11-1, at 10). Petitioner indicated he did not wish to have a staff representative or to present witnesses. Forbes Decl. Attach. C ("Notice DHO Hr'g") (ECF No. 11-1, at 12).

Petitioner appeared before the DHO on April 26, 2021. Forbes Decl. Attach. D § I(B) ("DHO Rpt.") (ECF No. 11-1, at 14). He stated he was "[n]ot guilty" and that he "did not know those cigarettes were there. [He] work[ed] all day." Id. § III.B. The DHO reviewed photographs of the evidence. Id. § III.D (ECF No. 11-1, at 15); see also Incident Rpt. (ECF No. 11-1, at 8) (photos of the socks and contraband). The DHO found that Petitioner possessed the contraband material. DHO Rpt. § V (ECF No. 11-1, at 15–16). The DHO observed that Murphy had "been assigned to the cell for over four months," and he was the only inmate housed there. Id. It was "unreasonable to believe that [Murphy was] unaware of the socks in the ceiling." Id. The DHO also considered Murphy's incentive "to be less than candid" as compared with Holderfield's lack of motive. Id. The DHO disallowed 14 days GTC and suspended four months of visiting privileges. Id. § VI (ECF No. 11-1, at 16).

The DHO completed the report on May 18, 2021. Id. § IX (ECF No. 11-1, at 17). Murphy received a copy of the DHO report on May 24, 2021, id., and he was notified of his appeal rights, id. § VIII. Petitioner first appealed the DHO decision to the Regional Director in June 2021. Pet. § 7(a) (ECF No. 1, at 2); Pet. Attach. (ECF No. 1, at 13). He thereafter appealed to the Central Office in July 2021. Id. § 8(a) (ECF No. 1, at 3); Pet. Attach. (ECF No. 1, at 15). He raised similar grounds as are asserted in this Petition, essentially arguing that the contraband

did not belong to him. See Pet. §§ 7(a)(6), 8(a)(6) (ECF No. 1, at 2–3). Each appeal was denied. See Pet. Attach. (ECF No. 1, at 14, 16).

### 2. Murphy's Current Petition in This Court.

Murphy filed his Petition in this court on March 9, 2022, under 28 U.S.C. § 2241. Pet. (ECF No. 1). He essentially advances the same arguments in his administrative appeals, namely that (1) the BOP failed to properly investigate whether the contraband material belonged to him; (2) that the contraband was found in a common area not directly under his control; and (3) that he would have had to violate BOP's policies to access the ceiling and so should not be held responsible for keeping the area free of contraband. Pet. § 13 (ECF No. 1, at 6–7). He also alleges that his appeal to the Central Office "was denied without any investigation to [his] claims." Id.

On May 27, 2022, Respondent moved for summary judgment. (ECF No. 10). Respondent argues that Plaintiff's due process rights were observed, and that the DHO's decision to revoke Murphy's GTC is supported by some record evidence. Mem. L. Supp. Resp't Mot. Summ. J. ("Resp't Mem.") (ECF No. 11, at 8–9). As required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Murphy was advised of his right to respond to the Motion, as well as the consequences of failing to respond. (ECF No. 12). Petitioner responded on June 17, 2022, alleging that various factual findings underpinning the DHO's decision were unsupported. ("Pet.'s Resp.") (ECF No. 13). On this procedural history and these undisputed facts, this Report addresses the merits of Respondent's motion for summary judgment. (ECF No. 10).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). "A material fact is one that might affect the outcome of the suit under the governing law. A disputed fact presents a genuine issue if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (cleaned up).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322–25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating a genuine triable issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted); see also Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III.     ANALYSIS

In his § 2241 petition, Petitioner alleges that he was deprived of 14 total days of earned GTC in violation of his Fifth Amendment right to due process. Pet. (ECF No. 1, at 2). Because this deprivation would have the functional effect of extending Petitioner's time of imprisonment,

it is a cognizable claim under § 2241. See Rodriguez v. Ratledge, 715 F. App'x 261, 266 (4th Cir. 2017) (unpublished per curiam opinion); see also Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). A prisoner's good conduct time is a protected liberty interest under the Fifth Amendment. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Petitioner's earned GTC is the only liberty interest at issue in this case.³ See Resp't Mem. (ECF No. 11, at 8 n.1).

As explained below, this Report finds that Petitioner's due process rights were observed, and the DHO's findings are supported by some evidence. Accordingly, this Report concludes that remand is not warranted, and recommends that the court grant Respondent's motion for summary judgment and dismiss the Petition.

A.  **Petitioner Was Afforded the Due Process Rights to Which He Was Entitled Under Wolff v. McDonnell.**

Prisoners are "entitle[d] . . . to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to [e]nsure that the . . . right is not arbitrarily abrogated." Wolff, 418 U.S. at 557. Specifically, due process requires that a prisoner subject to a loss of GTC through disciplinary sanctions be afforded the following:

> (1) written notice of the disciplinary charges at least 24 hours in advance of the hearing; (2) a neutral and detached hearing body; (3) an opportunity to present evidence and call witnesses; (4) an opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary proceeding involves complex issues; and, (5) a written statement provided by the fact finder of the evidence relied upon and the reasons for the decision.

Crawley v. Wilson, No. 2:11CV542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012) (citing Wolff, 418 U.S. at 563–67), R. & R. adopted sub nom. Crawley v. U.S. Dep't of Just., 2012 WL 2502712 (E.D. Va. June 27, 2012).

---

³ Petitioner also alleges that he was "transfer[red] to higher security" as a sanction for his violation. Pet. § 6(c) (ECF No. 1, at 2). But the DHO did not impose this sanction. See DHO Rpt. § VI (ECF No. 11-1, at 16). Petitioner is also currently housed at FCI Petersburg–low, which is where the incident took place. Forbes Decl. ¶ 4 (ECF No. 11-1, at 2); see also supra note 2.

Due Process under Wolff v. McDonnell was satisfied in Petitioner's case. First, Petitioner received written notice of the disciplinary charges more than 24 hours in advance of the disciplinary hearing. Petitioner received a detailed incident report charging him with a violation of BOP disciplinary code 331, possessing a non-hazardous tool, on April 7, 2021. Incident Rpt. §§ 9, 15 (ECF No. 11-1, at 5). The incident report identified the contraband—25 packs of Newport cigarettes and two pairs of hair clippers—and included facts that Holderfield used in concluding that the contraband was Murphy's, including that it was in his cell's ceiling, that he had been housed there several months, and that the socks were clean. Id. § 11. Prior to the DHO hearing, Petitioner was also advised of his rights to call witnesses, present evidence, and be represented by a full-time staff member. Inmate Rights (ECF No. 11-1, at 10). While Petitioner declined these opportunities, Notice DHO Hr'g (ECF No. 11-1, at 12), due process on these counts was nonetheless satisfied, Wolff, 418 U.S. at 563–67. Lastly, in compliance with Wolff, the DHO provided a written report that outlined the evidence it relied on and its reasons for the choice of disciplinary action, which Petitioner received. DHO Rpt. (ECF No. 11-1, at 14–17). Thus, Petitioner was afforded due process during the challenged disciplinary proceedings.

Petitioner alleges that the BOP failed to properly investigate whether the contraband material belonged to him. Pet. § 13 (ECF No. 1, at 6). Plaintiff argues that "the same exact kind of cigarettes" was discovered in a neighboring inmate's pillow, and an investigator could have compared serial numbers to prove whether the packs belonged to him. Pet. §§ 7(a)(6), 13 (ECF No. 1, at 2, 6). Respondent contends that Murphy failed to timely seek discovery on this question before the DHO hearing. Resp't Mem. (ECF No. 11, at 10). Generally, "if an inmate

fails to request access to or consideration of documentary evidence before or during a disciplinary hearing, then prison officials' failure to disclose or consider such evidence does not amount to a denial of due process." Lennear v. Wilson, 937 F.3d 257, 274–75 (4th Cir. 2019) (citing cases from other circuits). Because Petitioner did not request comparison of any serial numbers before the DHO hearing, he was not denied due process.

**B.     The DHO's Finding Was Supported by "Some Evidence."**

Due process also requires that the BOP's findings be "supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). The Supreme Court has held:

> [T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455–56 (quoting U.S. ex rel. Vajtauer v. Comm'r of Immigr., 273 U.S. 103, 106 (1927)) (cleaned up). Thus, the "some evidence" standard is a deferential standard that "does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456; see also Forbes v. Caraway, No. DKC-12-2215, 2013 WL 1742141, at *4 (D. Md. Apr. 22, 2013) (disturbing factual findings only "when unsupported by any evidence, or when wholly arbitrary and capricious" (citations omitted)); Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980) (refusing "to review the factual findings of prison disciplinary committees" (citations omitted)).

In this case, there is some evidence to support the DHO's finding that Murphy committed the charged violation. The DHO relied on Holderfield's "eyewitness account" of his search of cell 517, as recorded in the incident report. DHO Rpt. § V (ECF No. 11-1, at 15–16).

9

Holderfield recounted how he found the socks in the ceiling above the bunkbeds, and the contraband was in the socks. Id. Based on such evidence, the DHO concluded that the contraband was Murphy's. Id. While Petitioner raises multiple assignments of error with respect to the evidence, these objections do not change the fact that the DHO's decision was based on "some evidence."

First, Petitioner contends that the contraband was outside his control because it was "discovered in the ceiling common area" between his and a neighboring cell, which was accessible from either location. Pet. § 13 (ECF No. 1, at 6). Respondent argues that there would still be some evidence the contraband was Murphy's even if the ceiling area was "accessible to the inmate in the neighboring cell . . . ." Resp't Mem. (ECF No. 11, at 12). In McClung v. Hollingsworth, the Fourth Circuit upheld a constructive possession rule that applied "when relatively few inmates ha[d] access to the area." No. 06-6699, 2007 WL 1225946, at *3 (4th Cir. 2007) (unpublished) (noting that if "scores of other inmates" had access, the argument might have merit). Like in that case, accessing the ceiling above Murphy's bed "would have been difficult for another inmate," and Murphy has not shown "that any other inmate had actually gained access . . . or that he had requested" additional protective measures. Id. The existence of a single other potential violator, about whom Petitioner failed to present hearing evidence, is not sufficient to negate the evidence supporting the DHO's findings.

Murphy also argues that he would have had to violate BOP's policies to access the ceiling and so should not be held responsible for keeping the area free of contraband. Pet. § 13 (ECF No. 1, at 6–7) (referencing BOP Disciplinary Code 218, which prohibits altering and destroying government property). Respondent labels this argument a "red herring"[4] because

---

[4] A red herring is "[a]n irrelevant legal or factual issue" that is "intended to distract or mislead" the listener. Red herring, Black's Law Dictionary (11th ed. 2019). Petitioner takes issue with Respondent's

10

Murphy was punished for possessing contraband, not for failing to keep his cell clear. Resp't Mem. (ECF No. 11, at 13). While the DHO observed that it was "unreasonable to believe that [Murphy] was un[a]ware of socks in the ceiling," his likely awareness of the socks supported the DHO's conclusion that the contraband was Petitioner's property. DHO Rpt. § V (ECF No. 11-1, at 15–16). The only question before the DHO was whether Murphy possessed the tools. See id. (ECF No. 11-1, at 14); cf. Possession, Black's Law Dictionary (11th ed. 2019) (defining "possession" as "the exercise of dominion over property"). It is thus irrelevant whether BOP policies prohibited Petitioner from accessing the ceiling area where the contraband was found.

In his reply to Respondent's motion, Murphy argues, from the photograph entered in evidence, that "clearly the socks are soiled and dirty (full of dust) looking like they have been placed there for a long period of time, contrary to what the report says." Pl.'s Reply (ECF No. 13, at 2). The photo of the socks included in the Incident Report is grainy. See Incident Rpt. (ECF No. 11-1, at 8). But Holderfield reported that the socks "were clean and free of dust" when removed. Id. § 11 (ECF No. 11-1, at 5). Plaintiff did not contest the cleanliness of the socks during the DHO hearing or in his administrative appeals.[5] Thus, there was some evidence in the record before the DHO supporting that the socks had been recently placed in the ceiling area.

Petitioner also challenges Holderfield's lack of motive. Pet.'s Reply (ECF No. 13, at 2). Murphy notes that Holderfield was "conducting a targeted search of various areas of the Camp 5th floor" when he discovered Petitioner's contraband, Incident Rpt. § 11 (ECF No. 11-1, at 5),

---

characterization because it allegedly "contradicts" the DHO's reasoning. Pet.'s Reply (ECF No. 13, at 2). However, as explained above, Petitioner's argument does not focus on the relevant legal issue.

[5] To the extent Petitioner did not raise this argument—and other arguments—before, he failed to exhaust his administrative remedies. Federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530–31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).

11

which he alleges created motive, Pet.'s Reply (ECF No. 13, at 2). The DHO based a credibility finding partially on Holderfield's lack of "apparent motive" in the search. DHO Rpt. § V (ECF No. 11-1, at 15–16). A targeted search of a certain <u>areas</u> does not create any inference that Holderfield was incentivized to target <u>Murphy</u> specifically. Petitioner has not alleged any facts that alter the evidence underpinning the DHO's findings.

Lastly, Murphy alleges that his administrative appeals were "denied without any investigation to [his] claims." Pet. § 13 (ECF No. 1, at 7) (stating that the administrative "response only cites that . . . my rights have not been violated"). However, it appears that the administrative appeal process was followed, and he received written denials from both the Regional and Central Offices.[6] See <u>Id.</u> Attach. (ECF No. 1, at 14, 16). This last argument is meritless.

## IV. RECOMMENDATION

For the foregoing reasons, this Report RECOMMENDS that Respondent's Motion for Summary Judgment, (ECF No. 10), be GRANTED and that Murphy's petition under 28 U.S.C. § 2241 be DENIED and the claims DISMISSED with prejudice.

## V. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.

---

[6] In fact, the regulations explicitly provide that "[i]f the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

    2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 24, 2022

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing was mailed this date to:

**Andrew Murphy,** #92006-083
c/o FCI Petersburg Low
P.O. Box 1000
Petersburg, VA 23804

A copy of the foregoing was provided electronically this date to:

**Anna M. McKenzie**
United States Attorney's Office – Norfolk
101 W. Main St.
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

June 24 , 2022

14